UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
In re: John A. Walczuk,

                                                  Case No. 8-17-76195-reg
                                                  Chapter 7

                      Debtor.
-----------------------------------------------------------------x
Allan B. Mendelsohn, as Trustee of the
Estate of John A. Walcuk,

                     Plaintiff,

                                                    Adv. Pro. No. 8-18-08043-reg
             -against-

John A. Walczuk,
                    Defendant.
-----------------------------------------------------------------x

## MEMORANDUM DECISION

### *Introduction*

      This matter comes before the Court pursuant to an adversary proceeding commenced by Allan B. Mendelsohn, the Chapter 7 Trustee (the "Trustee") against John A. Walczuk (the "Debtor") seeking denial of the Debtor's discharge pursuant to 11 U.S.C. §§ 727(a)(2)(A), (a)(2)(B), (a)(3), (a)(4)(A), and (a)(4)(D). The Trustee's allegations center on the Debtor's pre-petition involvement with Zephirblue, LLC ("Zephirblue"), an entity wholly-owned by the Debtor's wife, Karen Walczuk. Despite the fact that the Debtor was Zephirblue's sole employee, the Debtor's schedules reflect that he received no compensation for his work. According to the Debtor's schedules, Karen Walczuk received income from Zephirblue which was used to pay the couple's household expenses. Upon a close examination of the documentary evidence and witness testimony, these representations have unraveled. The Walczuks did not ever receive a paycheck from Zephirblue. Zephirblue was used by the Debtor as a vehicle to pay the Debtor's household expenses without having Zephirblue pay salaries to either the Debtor or his spouse. While this

1

arrangement gave the Debtor and his spouse a means to minimize their taxable income, the Debtor's disclosure of his income and expenses in this bankruptcy case cannot be reconciled with the tax returns for the Debtor and Zephirblue. This helps to explain the numerous inconsistencies between the documentary evidence, the Debtor's testimony, his disclosures in this bankruptcy case, and the record before the Court. As a result, it is apparent that the Debtor's schedules contain false statements and omissions regarding his income and expenses, among other things.

The record also reveals a myriad of transactions between the Debtor, insiders, and Zephirblue, months before the petition date that the Debtor omitted from his required disclosures. In addition, throughout this proceeding, the Debtor has continued this pattern of failing to disclose required information and omitting material facts, including the receipt of rental income from a tenant. This tenant was not living in a separate rental property, rather the tenant was living in the Debtor's own home. When confronted with these facts, the Debtor failed to adequately provide any plausible explanation for these omissions and misstatements.

This case spotlights an issue raised in certain cases. The debtors in these cases may have run their business in a manner to minimize their personal tax obligations, but when they provide the required disclosures under the Bankruptcy Code, they fail to present an accurate picture of the debtors' finances. Sometimes the information on their tax returns does not match the information in their petitions, or they may lack the documentary evidence to support their disclosures. Here, it is not necessary to determine if the Debtor appropriately complied with his tax obligations. It is the Debtor's numerous omissions and misstatements in this bankruptcy case that concern this Court.

In addition to the misstatements and omissions in the Debtor's petition, the record clearly demonstrates that the Debtor's actions in the case and his testimony at trial were contradictory and

evasive.  As a result, the Trustee, the creditors and the Court were not given an accurate picture of the Debtor's financial condition. The Debtor's conduct in connection with the preparation of the schedules and his post-petition actions require the denial of the Debtor's discharge under 11 U.S.C. §§ 727 (a)(2)(B), (a)(3), and (a)(4)(A).

### *Procedural History*

The Debtor filed a voluntary petition ("Petition") for relief under chapter 7 of the Bankruptcy Code on October 10, 2017 (the "Petition Date"). On March 23, 2018, Allan B. Mendelsohn, the Trustee filed this adversary proceeding objecting to the Debtor's discharge pursuant to 11 U.S.C. §§727(a)(2)(A), 727(a)(2)(B), 727(a)(3), 727(a)(4)(A), and 727(a)(4)(D). An answer was filed by the Debtor on April 26, 2018. A pretrial order was entered on October 16, 2018, which set a trial date for December 18, 2018. A Joint Pre-Trial Memorandum was submitted by both parties on December 11, 2018, wherein both parties stipulated to the admission of all trial exhibits. The trial was held on December 18, 2018. At trial, the Debtor, the Debtor's wife, Karen Walczuk, and the Debtor's daughter, Alix Walczuk were called as witnesses. The Trustee submitted his post-trial brief on April 4, 2019, and the Debtor submitted his response on April 18, 2019. Thereafter, the matter was marked submitted.

### *Facts*

The Debtor filed the Petition with the assistance of counsel. The schedules list the Debtor's home, furniture, clothing, and other personalty. Pl.'s Ex A, Bates 00017-00022 ("Schedule A/B"). Schedule A/B discloses that the Debtor has an interest in "Electronics" but lists the value of such property as "$0.00" because his "wife owns all." Id. The Debtor lists a 51% ownership interest in "DV Recovery Services, LLC" ("DV"). Id. The schedules disclose that DV has a fair market value

3

of $1,000.00, because that amount "is in a bank account" but according to the Debtor, that money does not belong to DV.   Rather, "it belongs to Zephirblue." Id. Debtor's schedules indicate that the Debtor's mortgage is his only secured debt. Pl.'s Ex A, Bates 00025-00026.

Schedules I and J require disclosure of the combined monthly household income and combined monthly expenses, and therefore a debtor must disclose the income and expenses of a spouse. On the Debtor's schedules, his occupation is listed as a "Volunteer/Assistant" at Zephirblue, for which the Debtor claims he receives no salary. Pl.'s Ex A, Bates 00037-00038 ("Schedule I"). The Debtor's Schedule I indicates that Karen Walczuk, the Debtor's spouse, is the "Owner" of Zephirblue and receives a monthly salary of $6,103.00. Id. Both the Debtor and Karen Walczuk receive social security income. Their combined monthly household income is listed as $8,878. Id. The Debtor lists his 30-year-old daughter, Alix Walczuk, as a dependent. Pl.'s Ex A, Bates 00039-00040 ("Schedule J"). The Debtor's monthly household expenses, per Schedule J, includes the following: (1) $750 for home maintenance, (2) $1,100 for electricity, heat, and gas, (3) over $500 for phone, cable and internet, (4) $700 for medical and dental expenses, (5) $800 for gas and transportation, and (6) $650 for "wife's clothing/laundry/personal care." The Debtor's Schedule J lists total monthly expenses of $8,802.60, which leaves the Debtor with $75.40 in monthly net income after expenses.

The Debtor's Statement of Financial Affairs lists only the Debtor's social security income for the year 2015 ($20,630.40), the year 2016 ($21,051.40), and from January 1, 2017 until the Petition Date ($17,900). Pl.'s Ex A, Bates 00042-00048 ("SOFA"). The Debtor's SOFA states that no payments were made to an insider within one year prior to the Petition Date. Id. The Debtor's SOFA again lists his interest in DV, but claims the company "never did business." Id. The Debtor's Statement of Current Monthly Income indicates the Debtor and his spouse have a combined yearly

income of $73,236, which is less than the "median family income" in the state of New York, and for a household of three, which is $75,870. Pl.'s Ex A, Bates 00051-00052.As a result of this calculation, it was determined that there was no presumption of abuse pursuant to § 707(b)(2).

On March 23, 2018, the Trustee commenced this adversary proceeding, as well as an adversary proceeding against Zephirblue, DV, and ZB Negotiations ("ZB") (together, the "Companies") seeking to avoid transfers made by the Debtor to the Companies. Adv. Proc. No. 18-08044-reg. Shortly thereafter, and approximately six months after the Petition Date, Karen Walczuk filed her own petition for relief under chapter 7 of the Bankruptcy Code. Case No. 18-72540. As was true for the Debtor's Schedule I and Schedule J, Karen Walczuk was required to disclose her and the Debtor's the combined household income and combined household expenses.[1]

Karen Walczuk's petition was filed by an attorney other than counsel retained by the Debtor for his case. Pl.'s Ex. E. Karen Walczuk's petition discloses she was "doing business as" ZB. Karen Walczuk's Schedule A/B differs from the Debtor's in that her assets include 100% ownership in Zephirblue, with a value of $4,975, and two vehicles. Karen Walczuk's Schedule I lists her occupation as "retired" for the past four years, and that the Debtor is employed as an "insurance adjuster" at Zephirblue for the past five years. Id. While there are some similarities between the information disclosed in Schedules I and J, there are significant discrepancies. Both sets of schedules represent that the Debtor's only source of income is social security income. Karen Walczuk's Schedule I lists the social security income as well, plus her net income from business operations in the amount of $10,071.56 plus rental income in the amount of $1,900.00, for an

---

[1] Karen Walczuk obtained a discharge on January 29, 2019. Because no party in interest objected to Karen Walczuk's discharge, that matter is not before this Court.

aggregate monthly income in the amount of $12,929.56. This amount is more than double the amount of Karen Walczuk's income listed in the Debtor's schedules.

Karen Walczuk's Schedule J reflects additional differences from that of the Debtor. Karen Walczuk's monthly expenses include: (1) $300 for home maintenance, (2) $1,180 for electricity, heat and gas, (3) less than $450 for phone, cable and internet, (4) $600 per month for medical and dental expenses, (5) $450 for gas and transportation, and (6) $300 combined for clothing, laundry, and other personal care items. Pl.'s Ex. E. Karen Walczuk does not include Alix Walczuk as a dependent for the purposes of her Schedule J, and lists a household of two in her Statement of Current Monthly Income.

Karen Walczuk's Statement of Financial Affairs indicates that her gross income was $51,308 for the year 2016, and that her gross income was $114,634 for the year 2017. Additionally, Karen Walczuk lists rental income for 2017 in the total amount of $22,800, which was not included in the Debtor's Petition or schedules. Karen Walczuk's Statement of Financial Affairs indicates that she made no payments to insiders within the year prior to her petition.

Despite the glaring differences between the two petitions, they both create an appearance that the Debtor and Karen Walczuk were using the income Karen Walczuk received from Zephirblue to pay the bulk of their personal expenses.  In fact, Zephirblue was directly paying the personal expenses of the Debtor and Karen Walczuk as explained below.

<u>Omitted Transfers</u>

At some point, the Trustee learned of wire transfers from Matthew Walczuk, the son of the Debtor and Karen Walczuk, in the months before the Petition Date. Trial Tr., 49. The Debtor testified that Matthew Walczuk made a "loan" of $30,000 to Zephirblue. Trial Tr., 93. In

connection with this so-called loan, $25,000 was directed from Matthew Walczuk into an account in the name of the Debtor and Karen Walczuk at Citibank (the "Walczuk Citibank Account"). Trial Tr., 49. The Debtor testified that the terms of the supposed loan were never memorialized. Id. The Debtor stated that the money from Matthew Walczuk "ultimately flowed to the business." Id., 56.

In addition to the pre-petition transfer to the Debtor from Matthew Walczuk, the Trustee discovered transfers made by the Debtor pre-petition. Shortly after the transfer from Matthew Walczuk, the Debtor signed a check dated July 28, 2017 from the Walczuk Citibank Account to DV in the amount of $25,000. Pl's Ex. H. The Debtor testified that he himself wrote this check, Trial Tr., 51, and that he did so "to open a bank account, period." Id., 55. The Debtor explained at trial that this check from the Walczuk Citibank Account to DV was in connection with the "loan" from Matthew Walczuk, and that the funds "just went into our account [the Walczuk Citibank Account] and then it was transferred to the business." Id., 57. The Debtor testified that in August, 2017 the Debtor personally transferred by check approximately $1,200 to Matthew Walczuk as partial repayment. Id., 102. None of these transfers into or out of the Walczuk Citibank Account are disclosed by the Debtor in any of his filings in his bankruptcy case.

### Omitted Income

The Debtor's Schedule I indicates that his income is derived solely from his social security income in the amount of $1,790 per month. Schedule I further indicates that Karen Walczuk has a salary of $6,103 from Zephirblue, and that she receives $985 per month from social security. The Debtor does not disclose in his schedules the $1,900 per month in rental income listed in Karen Walczuk's schedules for 2017, totaling $22,800. At trial the Debtor testified that he did not include the rental income in his schedules because "it wasn't [his] income" and that it belonged to Karen Walczuk. Trial Tr., 42. When asked further why this income would not be included on his Schedule

I, which is a statement of his and Karen Walczuk's combined monthly income, the Debtor testified that he did not know. Id.

### Alix Walczuk as a Dependent

As noted above, the Debtor included his 30-year-old daughter, Alix Walczuk, as a dependent for the purpose of calculating his household size. Months later, when the Debtor's wife, Karen Walczuk, filed her own bankruptcy petition, Alix Walczuk was not listed as a dependent.

Because the Debtor claimed Alix Walczuk as a dependent, for the purposes of the Means Test, the Debtor's household was considered to be three – the Debtor, Karen Walczuk and Alix Walczuk. The Means Test is used to determine if a Chapter 7 debtor has the means to pay back debts (or at least a certain portion thereof). If a debtor's annual household income is less than the median annual household income for the state, based upon the number of people in the household, then there will be no presumption of abuse for filing a Chapter 7 petition, rather than under Chapter 13 or Chapter 11. The Debtor could not explain why he included Alix Walczuk as a dependent, or why, if she was a dependent, he did not then include her income in the calculation of household income. Trial Tr., 85-86.

As a result of improperly including Alix Walczuk in his household, the Debtor's annual income was less than the median income for a household of three in the state of New York, and therefore, there was no presumption of abuse in the Debtor's bankruptcy filing. Pl.'s Ex. A, Bates 00052. In fact, the stated annual income of $73,236 exceeded the New York State median income for a household of two at the time of the Debtor's filing, or $66,056.[2] Had the Debtor properly listed the number of people in the household, it is possible that the Debtor's case would have been

---

[2] https://www.justice.gov/ust/eo/bapcpa/20170501/bci_data/median_income_table.htm

subject to review by the office of the United States Trustee ("UST"), § 704(b)(1)(A), and subject to a motion to dismiss by the UST. § 704(b)(2). Ultimately, this case might have been dismissed or converted to Chapter 13 or Chapter 11. § 707(b)(2).

<u>Debtor's Expenses and Zephirblue's Income</u>

Debtor's Schedule J indicates that his total monthly expenses are $8,802.60. As outlined above, the line items in Schedule J include $750 for home maintenance, $1,100 for electricity, heat, and gas, over $500 for phone, internet and cable, $700 for medical and dental expenses, $800 for gas and transportation, and $650 for "wife's clothing/laundry/personal care". Given the Debtor's stated monthly household income of $8,878, the Debtor's stated monthly net income was $75.40.

The Debtor testified at trial that essentially all of the expenses listed in Schedule J were paid by Zephirblue through the use of the Zephirblue American Express card (the "Zephirblue Amex Card"). The Debtor testified that it was "possible" that the $750 per month for home maintenance was paid by Zephirblue. Trial Tr., 31. The $1,100 per month for electricity, heat and gas was paid through the use of the Zephirblue Amex Card. Id., 21. The over $500 per month spent on phone, internet, and cable was also paid through the use of the Zephirblue Amex Card. Id., 29. The $700 per month the Debtor listed for medical and dental expenses also "went through the American Express bill" – i.e., was paid using the Zephirblue Amex Card. Id., 31. The Debtor testified that the $800 per month for gas and transportation was paid by the Zephirblue Amex Card, Trial Tr., 31, and that a portion of this was a business expense, although it was included as a personal expense on the Debtor's Schedule J. The Debtor reasoned that the business portion of the gas and transportation expenses were included in Schedule J "[b]ecause everything that the company earned became [his] wife's personal income." Id., 31-32. Ultimately, the Debtor

conceded that the expenses listed on Schedule J were some combination of personal and business expenses, and that Zephirblue directly paid for substantially all of these expenses. Id., 32.

The Debtor claimed that Karen Walczuk never received a paycheck from Zephirblue, Trial Tr., 10, and that "the net revenue from the business [of Zephirblue] would have flowed to [Karen Walczuk]." Id., 40. The Debtor reasoned that because Zephirblue "was an LLC-single member… [a]ll income relative to that would be given to [Karen Walczuk]… in way of either paying a bill or maintaining it – whatever had to be done." Trial Tr., 19. In essence, all of the business income was retained in the Zephirblue Account. Instead of paying the Debtor and/or Karen Walczuk a salary which would have to be reflected as income in their joint tax returns, the money in the Zephirblue Account was used to pay essentially all of the Debtor's household expenses. The tax consequences that flow from this arrangement, as discussed below, evinces its purpose.

### The Debtor's Tax Returns and Income

The Debtor claims that he derived Karen Walczuk's income for purposes of Schedule I "based on [his 2016] tax return" because he had no other way to measure income for the year 2017. Trial Tr., 35. The Debtor's 2016 Tax Return (the "2016 Tax Return"), filed jointly with Karen Walczuk, indicates that the Debtor had no dependents and that the Debtor and Karen Walczuk received no income for the year 2016.[3] Def.'s Ex. F. The Debtor and Karen Walczuk carried forward a capital loss of $3,000, thereby rendering the Debtor's adjusted gross income for the year negative $3,000. Id. The 2016 Tax Return does not include the rental income omitted from the Debtor's schedules.

---

[3] The Debtor's 2016 Tax Return does list his and Karen Walczuk's social security benefits of $39,274 in 2016. Def.'s Ex. F.

Included in the 2016 Tax Return is a "Profit or Loss from Business" attachment – referred to as a "Schedule C" to an individual's tax return – for Zephirblue. Def.'s Ex. F, Bates 00161-00162 (the "2016 Business Return"). The 2016 Business Return indicates that Zephirblue had total gross receipts of $73,247 in 2016, and gross income of $67,697. Id. The 2016 Business Return shows that Zephirblue had business expenses of $16,389, leaving Zephirblue with a "tentative profit" of $51,308. Id.

The 2016 Business Return asks for the "net profit or loss" of Zephirblue by subtracting the expenses for the business use of the home ($0) from the "tentative profit" ($51,308), resulting in $51,308 in net profit, which is to be included on the 2016 Tax Return (as well as "Schedule SE" which is used to calculate self-employment taxes). The Debtor did not include this income on his 2016 Tax Return, and instead carried forward a passive activity loss ("PAL") of $304,819, which completely eliminated Zephirblue's taxable income. Def.'s Ex. F., Bates 00166-00168.

In 2016 neither Zephirblue nor the Debtor paid any income taxes. Notably the Debtor's "Tax History Report" for 2016 indicates that the Debtor claimed no taxable income for the years 2012 through 2016. Def.'s Ex. F., Bates 00171. After 2016, the Debtor and Karen Walczuk had $253,511 in PALs to apply towards passive activity income earned in the future. See 26 U.S.C. 469.

The Debtor's 2017 Tax Return (the "2017 Tax Return") was also filed jointly with Karen Walczuk. Pl.'s Ex. G. The 2017 Tax Return was filed on March 11, 2018, shortly after the Trustee began investigating the Debtor's finances, and little more than a week before the Trustee filed this adversary proceeding. The 2017 Tax Return includes the previously omitted rental income. Pl.'s Ex. G. As in 2016, the Debtor's 2017 Tax Return includes a "Profit or Loss from Business" attachment for Zephirblue. Pl's Ex. G, Bates 00186-00187 (the "2017 Business Return"). The 2017

11

Business Return states that in 2017 Zephirblue had gross receipts of $161,909 and business expenses of $47,275, leaving Zephirblue with a "tentative profit" of $114,634. Id.

As in 2016, the 2017 Business Return "net profit or loss" of Zephirblue is calculated by subtracting the expenses for the business use of the home ($3,334) from the "tentative profit" ($114,634), which would result in $113,00 of net profit. This "net profit" was omitted from the Debtor's 2017 Tax Return, and instead the Debtor applied the carried over PAL to Zephirlue's income, completely eliminating any tax liability. The 2017 Tax Return indicates that neither Zephirblue nor the Debtor had any tax liability in the year 2017.

Whether the tax returns for the Debtor and Zephirblue accurately disclosed deductions, expenses and losses is not before the Court. Nevertheless, this inspection of the Debtor's 2016 Tax Return and 2017 Tax Return helps explain the perplexing organization of the Debtor's personal finances and his consistently evasive demeanor in this case. By keeping all of the income in the Zephirblue Account and failing to report that income on his federal tax returns, the Debtor was able to avoid paying any taxes on what appears to be his or his wife's income.

### Karen Walczuk's Involvement with Zephirblue

Zephirblue is a single-member LLC, wholly-owned by Karen Walczuk for twelve years prior to the Petition Date. Pl.'s Ex. E; Pl.'s Ex. A. At trial, Karen Walczuk testified that the Debtor formed the entity and that "he ran the business" and that she had "very little" knowledge of the business. Trial Tr., 121, 133. Karen Walczuk testified that she never worked at Zephirblue, she did not participate in day-to-day operations of Zephirblue, she never reviewed any of the financial documents of Zephirblue, and she did not pay the bills of Zephirblue. Id., 108-109. Karen Walczuk's testimony reflects that she had little-to-no knowledge of her own personal finances, as well as the Debtor's finances. For example, she could not state how much her health insurance

was, she could not estimate how much she spent in gas for her car, and she testified that the Debtor "pretty much" controlled their personal finances. Id., 118-19, 133. Karen Walczuk's testimony at trial was sincere and the Court finds it credible that she had little-to-no awareness or involvement in the operations of Zephirblue.

### Discussion

The Trustee objects to the Debtor's discharge under §§ 727(a)(2)(A), 727(a)(2)(B), 727(a)(3), 727(a)(4)(A) and 727(a)(4)(D). A denial of discharge under § 727 "imposes an extreme penalty for wrongdoing, and as such, must be construed strictly against those who object to the debtor's discharge and liberally in favor of the bankrupt." *Republic Credit Corp. I v. Boyer (In re Boyer*, 328 Fed. Appx. 711, 714 (2d Cir. 2009)(internal quotations omitted)(citing *State Bank of India v. Chalasani (In re Chalasani)*, 92 F.3d 1300, 1310 (2d Cir. 1996)). The "[t]rustee bears the burden of proving by the preponderance of the evidence that a discharge should be denied based on one or more of the exceptions set forth in the statute." *Mazer-Marino v. Levi (In re Levi)*, 581 B.R. 733, 743 (Bankr. S.D.N.Y. 2017)(citing *Grogan v. Garner*, 498 U.S. 279, 287 (1991)).

Before analyzing the counts of the complaint, a threshold issue regarding what is and is not property of the Debtor's estate must be determined. The Trustee argues in his post-trial brief that the Debtor alone controlled Zephirblue, Pl.'s Br., ¶ 21, and he had unfettered access to Zephirblue's income. Id., ¶¶ 7, 14, 20. The Trustee asserts that this control was so absolute that Zephirblue must be considered property of the Debtor's estate and the Debtor was therefore required by law to disclose to his creditors the existence and value of Zephirblue. The Trustee also argues that it was incumbent on the Debtor to maintain and preserve the business records of Zephirblue as part of the Debtor's bankruptcy estate. In essence, the Trustee seeks a determination that Zephirblue is the alter ego of the Debtor. While "a court may pierce the corporate veil of a

business and treat its assets as the debtor's individual property, and, thus, property of the debtor's estate[] under an alter ego theory", *Pisculli v. T.S. Haulers, Inc.*, 426 B.R. 52, 60 (E.D.N.Y. 2010), the Trustee failed to plead this issue, and inexplicably failed to directly raise this issue at trial. It is plausible that had the Trustee properly pled and introduced evidence at trial on this issue, the Court would be in a position to rule on this important question. However, without such a record, the Court is left with no alternative than to treat Zephirblue and the Debtor as separate legal entities.

A. Objection to Discharge § 727(a)(4)(A)

The Code provides that a debtor's discharge shall be denied when "(4) the debtor knowingly and fraudulently, in or in connection with the case – (A) made a false oath or account." 11 U.S.C. 727(a)(4)(A). Under this section, the trustee must prove by a preponderance of the evidence that: (1) the debtor made a statement under oath; (2) the statement was false; (3) the debtor knew the statement was false; (4) the debtor made the statement with fraudulent intent; and (5) the statement related materially to the bankruptcy case. *Republic Credit Corp. I v. Boyer (In re Boyer)*, 328 Fed. Appx. 711, 715 (2d Cir. 2009).

A statement or omission in the bankruptcy petition, schedules, during an examination, or at the proceeding itself may constitute a false statement under oath for the purposes of § 727(a)(4)(A). *Bub v. Rockstone Capital, LLC*, 516 B.R. 685, 694 (E.D.N.Y. 2014 (citing *New World Restaurant Group, Inc. v. Abramov (In re Abramov)*, 329 B.R. 125, 132 (E.D.N.Y. 2005) (other citation omitted)). "Intent to defraud can be proven by evidence of either (1) the debtor's actual intent to deceive or (2) reckless disregard for the truth." *Bub v. Rockstone Capital, LLC*, 516 B.R. at 694 (citing *In re Natale*, 136 B.R. 344, 349 (Bankr. E.D.N.Y. 1992)). A "reckless disregard for the truth" can be "inferred from a series of incorrect statements and decisions contained in the schedules." *Bub v. Rockstone Capital, LLC*, 516 B.R. at 694 (citing *In re Dubrowsky*, 244 B.R.

560, 571-72 (E.D.N.Y. 2000)). Lastly, "any matter bearing on the discovery of estate property or the disposition of the debtor's property is material for purposes of § 727(a)(4)(A)." *In re Abramov*, 329 B.R. at 134. After the trustee provides sufficient evidence – i.e., when it reasonably appears that the debtor has made a false oath – the burden shifts to the debtor to come forward with proof that the misrepresentation was not intentional or to offer some other justification. *See Pereira v. Gardner (In re Gardner)*, 384 B.R. 654, 632 (Bankr. S.D.N.Y. 2008); *see also Baron v. Klutchko (In re Klutchko)*, 338 B.R. 554, 567 (Bankr. S.D.N.Y. 2005).

The Trustee objects to the Debtor's discharge under § 727(a)(4)(A), arguing that the Debtor "demonstrated a reckless indifference to the truth with regard to the information contained in his schedules." Pl.'s Br., ¶ 36. As outlined in detail above, the Debtor: (1) omitted $1,900 per month in rental income; (2) omitted the $1,200 pre-petition transfer from the Debtor to Matthew Walczuk, an insider; (3) incorrectly claimed Alix Walczuk as a dependent; (4) incorrectly claimed business expenses as personal expenses; and (5) omitted that Zephirblue actually paid all of the Debtor's household expenses. In his post-trial brief, the Trustee, however, only identifies three claimed expenses as false - the $750 in monthly home maintenance expenses, Pl.'s Br., ¶ 38, the $700 in monthly medical and dental expenses, and an $811 per month car loan payment.[4] Id., ¶ 39. The Trustee also asserts that the Debtor failed to include the $1,900 per month rental income in his schedules.

The Debtor argues that the Trustee has failed to show that these three expenses as claimed in the schedules are false. The Debtor acknowledges that he omitted the $1,900 monthly rental

---

[4] The Debtor's Schedule J includes an entry of $811 per month for a car loan. Pl.'s Ex. A. At trial, the Debtor initially indicated that the car loan payment was no longer an obligation at the Petition Date. Trial Tr., 26-27. The Debtor's testimony later at trial indicates that he was mistaken, and that the car loan payment did exist on the Petition Date, but that the loan matured shortly thereafter. Trial Tr., 46-47.

income, but claims that the omission was "an honest mistake" and this, standing alone, cannot constitute a "series of incorrect statements." Def.'s Br., ¶ 44. Therefore, the Debtor argues, the Trustee has not shown the requisite intent under the "reckless disregard for the truth" theory to deny the Debtor's discharge pursuant to § 727(a)(4)(A).

The Court finds the Debtor's argument sorely lacking. The evidence presented at trial, and the record before the Court demonstrate a clear pattern of omissions and falsehoods set forth in the Petition and schedules. Not only did the Debtor omit the rental income from his Schedule I and his SOFA, he improperly included Alix Walczuk as a dependent, omitted transfers between the Debtor and Matthew Walczuk pre-petition, omitted the fact that all the household expenses were paid by Zephirblue, and included business expenses of Zephirblue in his claimed personal expenses, among other things. The documents filed and signed under oath by the Debtor contained many falsehoods and omissions, making it extremely difficult – if not impossible – for the Trustee and creditors to ascertain the Debtor's true financial condition. Indeed, even now, the Debtor's financial conditions and transactions remain abstruse.[5] Taking the series of incorrect statements as a whole, the Debtor clearly exhibited a reckless disregard for the truth.

Moreover, the Debtor has failed to provide a credible explanation for the false statements or omissions, under the burden-shifting analysis of § 727(a)(4)(A). *In re Abramov*, 329 B.R. at 134. The Debtor claims that his omission of rental income was "an honest mistake," Def.'s Br., ¶ 44, but provides no basis for such a conclusion, and does not address the numerous other omissions

---

[5] For example, at trial, the Debtor claimed that "no expenses that were personal were charged to the business." Trial Tr., 19. However, moments later the Debtor explained that Karen Walczuk's "income" was derived, at least in part, from Zephirblue paying the household expenses. Id. When asked at trial what expenses Zephirblue incurred aside from the Debtor's household expenses, the Debtor claimed he did not understand the Trustee's questions. Trial Tr., 32-33. After that, the Debtor claimed he did not "believe" Zephirblue had additional expenses outside of the Debtor's household expenses as listed on Debtor's Schedule J. Id., 33. Finally, it was revealed that throughout 2017 Zephirblue had at least one other expense that was not reflected on the Detbor's Schedule J. Id., 33-34.

and falsehoods revealed during trial and otherwise documented on the record. The Debtor was unable to offer any credible explanation for omitting the very existence of a tenant who, on the Petition Date, lived in the Debtor's home and pays rent of $22,800 annually. Accordingly, the Court finds that the Debtor's series of false statements and omissions in his sworn bankruptcy Petition and schedules without any justification warrant denial of his discharge under § 727(a)(4)(A).

### B. Objection to Discharge § 727(a)(2)(A)

The Code precludes discharge when "the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed – (A) property of the debtor, within one year before the date of the filing of the petition." 11 U.S.C. § 727(a)(2). The trustee "must show an act of transfer, removal, destruction, mutilation or concealment during the one year period before the bankruptcy." *In re Singh*, 568 B.R. 187, 202 (Bankr. E.D.N.Y. 2017).

The § 727(a)(2) exceptions to discharge (i.e., § 727(a)(2)(A) and § 727(a)(2)(B), discussed below) "apply only if property was [removed, destroyed, mutilated or] concealed with the actual intent to hinder, delay, or defraud" and "given the disjunctive phrasing of the statute, proof of intent to hinder or delay is sufficient." *In re Levi*, 581 B.R. 733, 746 (Bankr. S.D.N.Y. 2017)(citations omitted). "[C]ourts have held that a debtor acts with an intent to 'hinder' if he or she acts with 'an intent to impede or obstruct' creditors [or a trustee] and an intent to 'delay' if he or she acts with 'an intent to slow or postpone creditors' [or a trustee]." *Id.* (citing *In re Wiggains*, No. 13-33757, 2015 Bankr. LEXIS 1460, 2015 WL 1954438, at * 17 (Bankr. N.D. Tex. Apr. 28, 2015), *aff'd sub nom. Matter of Wiggains*, 848 F.3d 655 (5th Cir. 2017)).

17

To establish a debtor's intent to defraud, courts in the Second Circuit look to "badges of fraud" for indirect proof of intent when direct evidence is unavailable. *See generally Saloman v. Kaiser*, 722 F.2d 1574, 1582 (2d Cir. 1983). Badges of fraud include (1) the lack or inadequacy of consideration; (2) the family, friendship or close associate relationship between the parties; (3) the retention of possession, benefit or use of the property in question; (4) the financial condition of the party sought to be charged both before and after the transaction in question; (5) the existence or cumulative effect of a pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; and (6) the general chronology of the events and transactions under inquiry. This list is intended to be instructive, and not exhaustive, and the trustee need not establish all the badges of fraud in order to raise the presumption of intent to defraud. *In re Singh*, 568 B.R. at 201 (citing *In re Pisculli*, 426 B.R. 52, 66 (E.D.N.Y. 2010)).

The Trustee asserts that the Debtor concealed property. Pl.'s Compl. 10, ¶ 37, ECF No. 1 ("Complaint"); Pl.'s Br., ¶ 6. The Complaint alleges that the Debtor "failed to accurately disclose and therefore concealed his property." Pl.'s Compl., 10, ¶ 37. The Trustee argues that "the funds" of Zephirblue were the Debtor's property because Zephirblue paid the Debtor's household expenses, and should be considered the Debtor's income. Pl.'s Br., ¶¶ 7, 11-14. The Trustee argues that because the "income" was "never included on either Schedule I or the Means[ ]Test," it was concealed from the Debtor's creditors. Id., ¶ 15.

As an initial matter, the cause of action under § 727(a)(2)(A) is based on the Trustee's conclusion that the funds of Zephirblue constitute the Debtor's property. Pl.'s Br., ¶ 7. To conclude that property of Zephirblue actually belonged to the Debtor would require piercing the corporate veil or establishing by evidence that Zephirblue is an alter ego of the Debtor. While the Court

acknowledges that this argument has some appeal as discussed above, there remains a gap between this legal theory and the introduction of sufficient evidence upon which a court can determine the validity of such theory. Unfortunately, the Trustee failed to develop a sufficient record which would permit the Court to find that Zephirblue was the alter ego of this Debtor. Therefore the Trustee has failed to show that any "property of the debtor" was concealed.

Additionally, the Trustee asserts that the Debtor's failure to disclose property in his schedules warrants a denial of discharge under §727(a)(2)(A). As this Court has held in prior cases, a denial of discharge under § 727(a)(2)(A) cannot be based upon omissions from the debtor's schedules. *Singh*, 568 B.R. at 202. In *Singh* the plaintiff-trustee objected to the debtor's discharge under § 727(a)(2)(A) alleging that the debtor failed to disclose his interest in a business entity in his petition and schedules. The Court held that the trustee had not "alleged any *pre-petition* conduct by the [d]ebtor sufficient to warrant a denial of discharge under § 727(a)(2)(A)." *Id.* (emphasis included) (holding instead that the failure to include assets in a debtor's petition and schedules was an act to conceal property post-petition, and warranted denial of discharge under § 727(a)(2)(B)). Since the Trustee has not shown *pre-petition* conduct warranting denial of discharge, and has not shown that property of the *Debtor* was concealed, the Court cannot deny the Debtor's discharge under § 727(a)(2)(A).

C. Objection to Discharge § 727(a)(2)(B)

The Code precludes the granting of a discharge when "the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed – (B) property of the estate, after the date of the filing of the petition." 11 U.S.C. § 727(a)(2). Like § 727(a)(2)(A), subsection (a)(2)(B) bars

the debtor's discharge if the debtor transferred, removed, destroyed, mutilated or concealed property, and applies the same standard for intent (i.e, intent to hinder, delay, or defraud). The Code sections differ, however, in that § 727(a)(2)(B) applies to those *post-petition* acts involving property of the *estate*.

The Trustee again alleges that the Debtor concealed property, and did so by "continu[ing] to use and operate Zephirblue". Pl.'s Br., ¶ 21. The inferential leap by the Trustee that the Debtor's use and operation of Zephirblue amounts to concealment of property of the estate is too great. The Trustee states that, despite "the Debtor's assertion that Zephirblue was owned by his non-filing spouse [Karen Walczuk], all of the indicia of the Debtor's ownership are present," Id., and that "the Debtor had a non-disclosed interest in Zephirblue" Id., ¶ 23. As stated above, the Court cannot conclude that the assets of Zephirblue are those of the Debtor because the issue was not set forth adequately in the Complaint and was not litigated at trial.

Nonetheless, the record before the Court reveals multiple instances where the Debtor concealed property of the estate post-petition. First and foremost, the Debtor concealed the check of $1,200 from the Walczuk Citibank Account to Matthew Walczuk. Pl.'s Ex. H. This money was transferred from the Debtor to an insider during the relevant look back period, and could have been the subject of a claw back from the Trustee. Notably, the Debtor's SOFA does not indicate any payments made to insiders within one year prior to the Petition Date. Pl.'s Ex. A. By failing to disclose this transfer of Debtor's property, the Debtor concealed property of the estate.

Similarly, the Debtor failed to disclose, thereby concealing, the rental income he received pre-petition. The Debtor testified that the tenant had been living with the Debtor "for a number of years," and that the tenant paid $1,900 per month in cash to the Debtor and Karen Walczuk. Trial Tr., 40-41. Additionally, the Debtor testified that he would deposit this rental income in "either

20

bank account," i.e., the Walczuk Citibank Account or the Zephirblue Account. Trial Tr., 41. Again, these funds were property of the estate, requiring disclosure in the Petition and schedules. The Debtor's assertion that the rental income belonged to Karen Walczuk is not credible. The Debtor had already testified that *he* and Karen Walczuk received this rental income in cash for a number of years, totaling $22,800 per year. The Debtor offers no evidence to support that this income belonged solely to Karen Walczuk, and if so, why it would not be included in the combined household income on the Debtor's Schedule I. The Debtor claimed that the rental income "may have been deposited directly into Zephirblue" but that he could not "recall exactly how we treated it [on the Debtor's 2016 Tax Return]… whether it was treated as Zephirblue's income." Id., 42. Ultimately, the Debtor conceded that on the 2017 Tax Return the rental income was treated as personal income. Id., 67. Even if the Debtor "treated" the rental income as the property of Zephirblue on his tax returns, that does not make it so. The Debtor's testimony does little to support his assertion that the rental income belonged to Karen Walczuk, and rather shows the extent to which the Debtor consistently transferred property, or purposefully averted assets away from himself. More to this point, even if the Debtor could show that the rental income belonged solely to his wife, that income was required to be disclosed on his Schedule I as household income. By failing to disclose such information in his schedules, the Debtor acted to conceal property of the estate post-petition.

In addition, § 727(a)(2)(B) "requires a showing of actual intent to hinder, delay or defraud." *In re Bostick*, 400 B.R. 348, 356 (Bankr. D. Conn. 2009). The Trustee alleges that the requisite intent to defraud can be established "by applying the *Kaiser* badges of fraud." Pl.'s Br., ¶ 23. The Trustee states, but does not analyze the "badges of fraud" as set forth in the Second Circuit case *Saloman v. Kaiser*, included above. The Trustee claims that the Debtor's "ability to simply reach

into Zephirblue and keep the income out of the Debtor's name, appears to be part of a scheme to insulate the Debtor's funds from his creditors." Pl.'s Br., ¶ 20. The Trustee has not stated which, if any, "badges of fraud" apply to the Debtor, and how they apply. Therefore, the Trustee has not shown that the Debtor concealed property with the requisite intent to defraud.

Nonetheless, the Debtor clearly acted with intent to hinder or delay the Trustee in administering the Debtor's estate. The Debtor's schedules contain numerous false representations and omissions, discussed in detail above, many of which do not fairly represent his true financial condition. Moreover, during the trial the Debtor continued to obscure important issues. The Debtor refused to explain important financial transactions (such as whether the rental income was actually his, and the facts surrounding the so-called loan from Matthew Walczuk), failed to explain or otherwise substantiate the Debtor's claimed expenses, and failed to explain what the Debtor did with the undisclosed income. The Debtor's failure to answer questions truthfully at trial illustrate the Debtor's intent to hinder and delay the Trustee's administration of the bankruptcy case.

In sum, the Debtor concealed rental income and financial transactions involving property of the estate. The Debtor did so by failing to disclose the property and transactions from his Schedules, i.e., post-petition. The Debtor's testimony illustrates his pervasive intent to hinder and delay the Trustee in administering the estate. Based upon the record before the Court, there exists sufficient unrebutted evidence for the Court to deny the Debtor's discharge under § 727(a)(2)(B).

D. Objection to Discharge § 727(a)(3)

The Code prohibits a debtor's discharge if that "debtor has concealed, destroyed, mutilated, falsified, or failed to preserve any recorded information … from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case." 11 U.S.C. 727(a)(3). To sustain an objection

to discharge under this section, a plaintiff need not prove a debtor intended to deceive. *In re Adler*, 494 B.R. 43, 67 (Bankr. E.D.N.Y. 2013). Courts employ a two-step burden-shifting approach when assessing if a debtor has met his or her requirement regarding recorded information under this section. *In re Cacioli*, 463 F.3d 229, 235 (2d Cir. 2006).

First, the plaintiff must prove "that the debtor failed to keep and preserve any books or records from which the debtor's financial condition or business transactions might be ascertained." *Cacioli*, 463 F.3d at 235.

> A record's 'adequacy' is measured by utilizing eight non-exhaustive factors: (1) whether the debtor was engaged in business, and if so, the complexity and volume of the business; (2) the amount of the debtor's obligations; (3) whether the debtor's failure to keep or preserve books and records was due to the debtor's fault; (4) the debtor's education, business experience, and sophistication; (5) the customary business practices for record keeping in the debtor's type of business; (6) the degree of accuracy disclosed by the debtor's existing books and records; (7) the extent of any egregious conduct on the debtor's part; and (8) the debtor's courtroom demeanor.

*Adler*, 494 B.R. at 67 (citing *In re Sethi*, 250 B.R. 831, 838 (Bankr. E.D.N.Y. 2000)). A plaintiff can meet its initial burden by showing either (1) the provided records' inadequacy, or (2) the impossibility of ascertaining the debtor's financial condition and the nature of business transactions that occurred within a reasonable period prior to the filing from the records tendered by the debtor. *Id.* (citing *In re Sethi*, 250 B.R. at 837-838). Once the plaintiff meets the initial burden, the burden shifts to the debtor to produce credible evidence to rebut the proof of insufficient records, or to justify the lack of records. *In re Gardner*, 384 B.R. at 662 (citing *In re Nemes*, 323 B.R. 316, 325 (Bankr. E.D.N.Y. 2005)).

The Trustee argues that the Debtor lacked adequate records regarding the Debtor's calculation of claimed expenses. Pl.'s Br., ¶ 27-29. The Debtor testified that portions of the claimed expenses – all of which were paid by Zephirblue – were actually business expenses, but could not

offer any records or further explain how the Debtor allocated certain expenses to the business or to his personal expenses. Trial Tr., 23-24. The Debtor counters the Trustee's contention, arguing that the Trustee has not stated with specificity what is lacking from the Debtor's disclosures, Def.'s Br., ¶ 29, and that the Trustee did not ask the Debtor to turn over additional documents. Def.'s Br., ¶ 31-32. The Debtor essentially argues that Trustee "had copies of the Zephirblue [Amex Card] statements, Zephirblue's bank statements, and the [Debtor's] personal bank statements" and therefore adequate documentation was provided. Id., ¶ 31.

The Court finds the Debtor's argument unconvincing. After analyzing the records' adequacy under the eight non-exhaustive *Sethi* factors, it is clear that the records provided by the Debtor are inadequate. First, the Debtor operated and managed Zephirblue as its only employee, which earned gross receipts in excess of $160,000 in 2017. Pl.'s Ex. G. Karen Walczuk's testimony makes clear that the Debtor alone paid the household expenses, Trial Tr., 112-113, and therefore the failure to keep receipts and other documents related to the Debtor's household expenses is the Debtor's alone. The Debtor is an insurance claims negotiator, and was the sole employee of Zephirblue for years. The Debtor personally incorporated Zephirblue, DV and ZB. Trial Tr., 70-71, 94, 121. Additionally, the Debtor's testimony reflects an above-average understanding of corporate tax law. Id., 91.  The Debtor's business sophistication, education and experience undercuts any argument that the Debtor was not aware of proper record-keeping requirements. The Debtor did not turn over any personal books and records to support his claimed expenses. In fact, the Debtor contradicted himself at trial more than once regarding how the Debtor calculated expenses, and whether Zephirblue paid for personal expenses. See Footnote 5, *supra*. For example, at one point at trial, the Debtor claimed Zephirblue did not incur any expenses that were personal. See Footnote 5, *supra*.  When asked how the Debtor calculated the $750 per month household

24

expense, the Debtor stated he "went through" his personal account, i.e., the Walczuk Citibank Account, and the "business account", presumably the Zephirblue Amex Card statements or the Zephirblue Account. Trial Tr., 18-19. Then the Debtor claimed that he created a "schedule" regarding the allocation of "various expenses." Id., 24. Finally, the Debtor claimed that "at the end of every year, [he] would go through the [Zephirblue Amex Card] bill month by month by month by month and list down all the different expenses and what could be allocated to the business and what could not be allocated to the business." Id., 91. At no point is the record clear regarding which specific accounts were used to pay which specific expenses, and how the Debtor calculated or apportioned between business expenses and personal expenses.

Ultimately, the records provided by the Debtor do not sufficiently show the Debtor's financial condition, and thus are inadequate. There is no way to ascertain from the Debtor's records what expenses, if any, are attributable to the business, rather than to the household. The Trustee has met his burden under § 727(a)(3), showing that the Debtor's true financial condition cannot be ascertained from the records provided.

Completing the two-step approach, the Court now turns to the Debtor's justification regarding the inadequacy of the provided records. The Debtor reasons that the Trustee "never asked anything of the [Debtor] other than to recall, from memory, specifics about transactions that occurred months or even years before the trial date." Def.'s Br., ¶ 30. This assertion does not justify the Debtor's failure to keep and maintain records regarding his claimed expenses. Again, the Court finds the Debtor's argument unconvincing. The Debtor claimed a number of expenses on his Schedule J – a sworn statement under oath – and had a duty to make sure those numbers were accurate. The Debtor acknowledged that business expenses and personal expenses should have been paid separately, Trial Tr., 19, but similarly acknowledged that the business was paying the

claimed household expenses, Id., the claimed medical and dental expenses, Id., 31, the claimed medical insurance expenses, Id., the claimed gas and transportation expenses, Id., the claimed electric and gas expenses, Id., 20-21, and the claimed phone, internet and cable expenses. Id., 29.

During the trial, the Debtor claimed he "did a schedule … as to how we allocated various expenses." Trial Tr., 24. For example, the Debtor claimed that the amount of gas and transportation expenses would be allocated "based on the amount of time the vehicle was used to visit body shops … the amount of time [he] spent." Id. This, if true, only further supports the Trustee's argument. While the burden is on the plaintiff to sustain an objection to discharge, "the debtor is obligated to produce the records in the first place." *In re Shah*, 388 B.R. 23, 33 (Bankr. E.D.N.Y. 2008)(citing *In re Sethi*, 250 B.R. at 838). The Debtor's testimony indicates that he "did a schedule" allocating business expenses from personal expenses, however the Debtor did not turn that "schedule" over to the Trustee. Section 727(a)(3) does not require a debtor to keep "impeccable system of bookkeeping or records", but rather asks if "there is available written evidence made and preserved from which the debtor's present financial condition, and his recent business transactions for a reasonable period in the past, may be ascertained with substantial completeness and accuracy." *In re Sethi*, 250 B.R. at 838. Assuming the Debtor's sworn testimony is true, the failure of the Debtor to produce this "schedule" which could shed light on the Debtor's claimed personal expenses is unreasonable.

Under the two-step, burden-shifting analysis, the Trustee has established that the Debtor failed to keep, maintain, preserve and/or produce written evidence from which the Debtor's financial condition can be reasonably ascertained. No evidence was provided to substantiate the Debtor's claimed expenses. The Debtor testified that he essentially charges all expenses, whether business or personal, to Zephirblue, and that he claimed both business and personal expenses on

his Schedule J. Trial Tr., 32. The Debtor produced no written evidence to support his assertion that certain expenses were allocated to the business, despite testifying that he created a "schedule" to help allocate such expenses. The Debtor provides no justification for the failure to keep or produce records. Therefore, denial of the Debtor's discharge is warranted under § 727(a)(3).

E. <u>Objection to Discharge § 727(a)(4)(D)</u>

A debtor's discharge shall be denied if "(4) the debtor knowingly and fraudulently, in or in connection with the case – (D) withheld from an officer or the estate entitled to possession under this title any recorded information, including books, documents, records and papers, relating to the debtor's property or financial affairs." 11 U.S.C. § 727(a). "Courts have interpreted this section as imposing an affirmative duty on the debtor to cooperate with the trustee by producing all documents that the trustee requests" and that "[f]ailure to do so would constitute grounds for a denial of discharge." *In re Singh*, 568 B.R. 187, 198 (Bankr. E.D.N.Y. 2017)(citations omitted). The requisite intent can "be presumed based upon the circumstantial evidence including the debtor's conduct." *Id.* (citing *In re Gardner*, 384 B.R. 654, 668 (Bankr. S.D.N.Y. 2008)). Similarly, a plaintiff can establish the debtor acted "knowingly and fraudulently" when the debtor's conduct is evasive or persistently uncooperative. *Id*. Conversely, "courts have found that the requisite intent to act 'knowingly and fraudulently' was absent where the records were unavailable through no fault of the debtor" such as "where the records sought by the trustee were … neither prepared nor kept by the debtor." *In re Young*, 346 B.R. 597, 615 (Bankr. E.D.N.Y. 2006)(citing *In re Graham*, 111 B.R. 801 (Bankr. E.D. Ark. 1990)).

The Trustee asserts that "the Debtor had a duty to maintain records on behalf of Zephirblue and to turn over those records" to the Trustee. Pl.'s Br., ¶ 43. As a matter of law, the Trustee's argument is partially incorrect. This subsection of the Code does not impose a duty on the debtor

to maintain adequate records, as is true for § 727(a)(3). Moreover, nothing in the Code or relevant case law imposes a duty upon the debtor to maintain documents of separate legal entities without a finding that the entity is the alter ego of the debtor. *See generally In re Adler*, 494 B.R. 43. However, this section of the Code does require the debtor to turn over documents duly requested by the trustee. The Trustee claims he demanded that the Debtor "provide documents supporting the testimony" regarding "amounts he [the Debtor] withdrew from Zephirblue" but that "not a single document has ever been provided." Pl.'s Br., ¶ 44. The Debtor counters that while the Trustee made demands by 2004 subpoena upon individuals and the Corporations, "[n]one of those demands were made on the [Debtor]." Def.'s Br., ¶ 49-50. Further, the Debtor argues that because the Trustee has not asserted an "instance of the [Trustee] demanding some document with reasonable specificity" it cannot be said that the Debtor "knowingly and fraudulent[ly] withheld documents from the [Trustee]." Id., ¶ 52.

The Court agrees with the Debtor. The Trustee has failed to identify a specific document requested by the Trustee that the Debtor did not produce. Similarly, the Trustee has not shown that the Debtor did not comply with a request for documents. Notably, the Trustee does not even allege that Debtor acted "knowingly and fraudulently." Because the Trustee's failed to meet his burden of proof under § 727(a)(4)(D), the Court will not deny the Debtor's discharge under this section.

*Conclusion*

For the reasons set forth herein, the Court finds in favor of the Trustee on the Counts 2, 3 and 4 causes of action.  The remaining causes action, Counts 1 and 5, are dismissed.  The Court shall enter a judgment denying the Debtor's discharge under 11 U.S.C. §§ 727 (a)(2)(B), (a)(3) and (a)(4)(A).



**Dated: Central Islip, New York**
**June 21, 2019**

**Robert E. Grossman**
**United States Bankruptcy Judge**